**VERTICAL RESOURCES, INC., Appellee,**

v.

**Jessica J. BRAMLETT, Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 2003.

Filed Nov. 26, 2003.

T.F. Weiss, Houston, TX, for appellant.

BEFORE: JOYCE, TODD and BOWES, JJ.

OPINION BY BOWES, J.:

¶ 1 Jessica Bramlett has appealed two decisions by the trial court, one denying her petition to compel arbitration and the other disqualifying her counsel. We affirm the order denying arbitration and reverse the order disqualifying counsel.

¶ 2 On April 22, 1999, Appellee, Vertical Resources, Inc. ("Vertical"), instituted this action against Appellant alleging that, in 1997, it made four separate loans to Appellant to fund legal expenses, that Appellant failed to repay those loans, and that she owed Vertical more than $20,000. Vertical sought repayment of those loans. In response, Appellant countered that she had invested $262,000 in a gas project that had been offered by Vertical and that the pay-

ments made by Vertical in 1997 represented interest on her investment, not loans. Appellant noted that Vertical had failed to attach to its complaint any written documents supporting the existence of a loan.

¶ 3 After discovery and other proceedings, the case was scheduled for trial. Appellant filed a motion for summary judgment and supporting brief. That motion remained pending when Appellant moved for an uncontested general continuance of the trial. The continuance was granted on September 20, 2000, when the court denied the motion for summary judgment.

¶ 4 Eleven months later, on August 27, 2001, Vertical filed a petition "to enforce judgment," alleging "On September 21, 2000, the parties in the above captioned matter reached agreement for the settlement of all claims ... wherein [Appellant] agreed to have judgment entered against her in the full amount of the claim, and agreed to a monthly payment plan." Petition to Enforce Judgment, 8/27/01, at ¶ 5. Vertical averred that Appellant had not paid in accordance with the agreement. It requested that judgment be entered against Appellant in the full amount requested in this action, $24,230.56. The petition was not answered, and the court entered an *ex parte* judgment against Appellant.

¶ 5 On January 2, 2002, Appellant filed a petition to open or strike the judgment and also a petition to compel arbitration, asserting the following. In July 1996, Appellant and her former husband, Jay Bramlett, invested $260,000 in an oil and gas drilling program known as the "Hawk 96." Steve Ford, the president of Vertical, was the promoter of Hawk 96 and solicited the Bramletts to make this investment. Hawk 96 was a failure from the beginning, and Mr. Ford misrepresented the possible success of the project in promotional materials. Contrary to the partnership agreement, Vertical also failed to provide pro-

duction and financial information that would explain the poor results.

¶ 6 Jay Bramlett later was convicted of a criminal offense and sentenced to prison in Texas. He offered Appellant a divorce and as part of the divorce settlement, assigned his interest in Hawk 96 to her. Without notifying Appellant, Mr. Ford began to negotiate a sale of oil and gas assets, including Hawk 96, to Snyder Brothers, Inc. Mr. Ford asked Appellant to sign a release with Vertical and Mr. Ford individually in order to complete the sale to Snyder Brothers. Appellant refused to do so because Vertical never provided her with an accounting. Shortly after Appellant refused to execute the release, Mr. Ford sent her a letter dated November 9, 1998, in which he first claimed that disbursements made by Vertical to Appellant in 1997 were loans.

¶ 7 Further allegations in the petition to open judgment represent that the parties reached a tentative agreement in this matter regarding payment. Then, in June 2001, Appellant instituted an action in federal court in Texas against both Vertical and Snyder Brothers alleging breach of contract in connection with the Hawk 96 program. In retaliation, Mr. Ford resurrected this action and filed the aforementioned petition to enforce the settlement agreement purportedly reached by the parties.

¶ 8 Appellant's petition further averred that the attorney who initially represented Appellant in this action received the notification regarding the petition to enforce judgment from Vertical. The attorney assumed that he no longer represented Appellant and did not notify her of Vertical's request for judgment. Meanwhile, directly contrary to its position in this action, Vertical had represented in tax documents filed with the Internal Revenue Service ("IRS") that the sums distributed to Ap-

pellant in 1997 were payments of interest on her investment in Hawk 96. In fact, Vertical sent Appellant IRS form 1099s regarding those sums.

¶ 9 In support of her position that this action should be arbitrated, Appellant quoted the relevant contract language:

All disputes and controversies between the Parties relating to, and arising from interpretation, application, performance, or breach of this Agreement shall, at the demand of any Partner, be determined by arbitration before Three [3] Arbitrators, in Sugar Grove, Pennsylvania and pursuant to the rules of the American Arbitration Association.

Defendant's Petition to Open and Strike Judgment and to Compel Arbitration, 1/2/02, at ¶ 21. However, the partnership agreement, although referenced as an exhibit to her petition, was not attached thereto in the certified record on appeal.

¶ 10 The record indicates that in the meantime, in November and December 2001, based on the existence of the *ex parte* judgment, Vertical obtained $3,922.37 from Snyder Brothers that should have been paid to Appellant. The next action that the trial court undertook herein was to admit Texas counsel, Theodore F. Weiss, *pro hac vice* for the purpose of representing Appellant. After a January 2, 2002 hearing, the petition to open the judgment entered against Appellant was granted. The trial court did not rule upon the arbitration request. Vertical then filed a certificate of readiness. The court administrator appointed a board of arbitrators because the matter involved $25,000 or less.

¶ 11 On March 26, 2002, Vertical moved for sanctions based on the following allega-

tions. On February 1, 2002, Mr. Weiss contacted Vertical's president, Mr. Ford, by telephone without permission from Vertical's counsel, James C. Blackman. At the time, Mr. Blackman was away from his office. Mr. Ford filed an affidavit in which he recounted his recollection of the contents of that telephone conversation. The affidavit indicates that Mr. Weiss asked Mr. Ford who was representing Vertical in the federal action in Texas and Mr. Ford provided Mr. Weiss with the name, address and telephone number of his counsel.

¶ 12 Mr. Weiss then began to ask Mr. Ford if he was going to return the $3,922.37 obtained from Appellant during the period that the judgment was in existence because if not, Mr. Weiss planned to request its return, with interest and penalties. Mr. Ford responded that he would act in accordance with his attorney's advice. The conversation then touched upon matters that involved the federal action, including drilling methods. After a one-half hour discussion involving the federal case, Mr. Weiss renewed his request that Mr. Ford return money that Vertical had obtained based on its judgment in this action. Mr. Ford again responded that he would speak with his attorney, Mr. Blackman, and act in accordance with his advice.

¶ 13 In the motion for sanctions based upon this telephone conversation, Vertical asserted that the contact by Mr. Weiss: 1) violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct;[1] 2) involved an attempt to negotiate a settlement of this action and the pending federal action by Appellant; and 3) continued despite expressions by Mr. Ford that he should not be speaking with Mr. Weiss. Maintaining that the breach of the rules of

---

1. **Rule 4.2 Communication with Person Represented by Counsel**

 In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

professional conduct was severe, Vertical asked that Mr. Weiss be disqualified from representing Appellant.

¶ 14 Based on the motion to disqualify, the court issued a rule upon Appellant to show cause why the motion should not be granted. The rule was returnable on May 15, 2002.

¶ 15 On April 4, 2002, Appellant renewed her petition to compel contractual arbitration and also petitioned for a return of the nearly $4,000 collected by Vertical on the strength of the judgment that had been opened. On April 16, 2002, Appellant responded to the motion for sanctions. Appellant contended that disqualification was unnecessary under the facts and improper under the law for the following reasons.

¶ 16 On September 26, 2001, Vertical had obtained default judgment against Appellant. In reliance on the judgment, Vertical seized monthly partnership checks from Snyder Brothers for November and December 2001 that were payable to Appellant, even though it had notice of the hearing on the motion to open the judgment before it seized the December check. After the judgment was opened, Appellant strongly believed that the money taken pursuant to that judgment should be returned.

¶ 17 Accordingly, Mr. Weiss repeatedly contacted Mr. Blackman's office in order to ascertain whether Vertical voluntarily would return the money. Mr. Weiss received no response to his messages. In the meantime, the federal magistrate handling Appellant's federal action against Vertical and Snyder Brothers in Texas had issued an order requiring a scheduling conference that had to occur among counsel for the three parties in the federal action no later than February 4, 2002. A copy of the federal order is attached to the answer to the motion for sanctions. Mr. Blackman had informed Mr. Weiss that he was not going to represent Vertical in the federal matter. To comply with this order, Mr. Weiss contacted Mr. Blackman to determine who would be involved in representing Vertical in the federal action. Despite numerous messages about the issue, Mr. Blackman did not respond.

¶ 18 On January 28, 2002, Mr. Weiss faxed Mr. Blackman, again asking who would be handling the federal matter for Vertical. A copy of the fax is in the record. Mr. Blackman did not respond to the fax. On Friday, February 1, 2002, three days before the federally-imposed Monday, February 4, 2002 deadline, Mr. Weiss telephoned Mr. Blackman's office again. Mr. Weiss was informed that Mr. Blackman was away from the office and would not return until Wednesday, February 6, 2002. At that point, Mr. Weiss telephoned Mr. Ford at Vertical. Mr. Weiss averred that during that conversation, he did not gain information that was not otherwise known and did not continue the conversation against Mr. Ford's will.

¶ 19 Mr. Weiss filed an affidavit regarding his recollection of the contents of that conversation. In the affidavit, Mr. Weiss recounted his numerous attempts to have Mr. Blackman contact him about the return of the money seized under the opened judgment and about who would represent Vertical in the federal action. He noted that he even faxed Mr. Blackman on January 28, 2002, to no avail. With the federal deadline approaching in three days, Mr. Weiss telephoned Mr. Blackman's office on Friday, February 1, 2002, to obtain the name of federal counsel, only to be informed that Mr. Blackman was gone until after the federal deadline was to expire. Mr. Weiss telephoned Mr. Ford due to Mr. Blackman's repeated failure to return Mr. Weiss's telephone calls and the approaching federal deadline.

¶ 20 After obtaining the information from Mr. Ford about his federal counsel,

Mr. Weiss broached the subject of the return of the money seized pursuant to the opened judgment. Mr. Weiss raised the subject with Mr. Ford due to Mr. Blackman's repeated failure to return his telephone calls about the return of the money. After Mr. Ford said that he would speak with Mr. Blackman, Mr. Ford continued the conversation, not Mr. Weiss. Specifically, Mr. Weiss avers:

> At that point, Mr. Ford said words to the following effect: "I really should not continue this conversation, but I will." He then began a long defense of his conduct in handling the Hawk 96 and Warren 150 oil and gas drilling programs, apparently trying to convince me that he had performed his duties as operator properly. For the preceding two to three months, the parties had engaged in settlement discussions for both lawsuits, and Mr. Ford stated that Ms. Bramlett should accept the offer previously made by Snyder Brothers and Vertical Resources.

Affidavit of T.F. Weiss, 4/12/02, at ¶ 12. Mr. Weiss further stated that Mr. Ford "raised" the subject of the federal case and "volunteered" the above information. *Id.* at ¶ 13.

¶ 21 Appellant also filed an affidavit indicating that Mr. Weiss had agreed to represent her in this action at an hourly rate with a $5,000 cap, that no other counsel would agree to such an arrangement, that her former husband is in federal prison and does not provide child support for their two children, that her monthly income is approximately $2,500, and that Appellant does not have means to hire another attorney to represent her in this action.

¶ 22 On June 10, 2002, the trial court issued an order disqualifying counsel. On July 2, 2002, the trial court denied Appellant's motion for arbitration. This appeal from both orders was filed on July 12, 2002.

¶ 23 Initially, we consider both the timeliness of the appeal from the June 10, 2002 disqualification order, and whether either order is appealable under the Rules of Appellate Procedure. As noted, the appeal from the June 10, 2002 order was filed on July 12, 2002. A notice of appeal must be filed within thirty days. Pa.R.A.P. 903(a). Thus, the appeal from the disqualification order appears to be untimely. However, there is no indication on the docket that the prothonotary sent notice of the filing of the order, as required by Pa.R.Civ.P. 236.

¶ 24 In *Frazier v. Philadelphia*, 557 Pa. 618, 735 A.2d 113 (1999), our Supreme Court stated:

> Rule of Appellate Procedure 301(a) provides that "no order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court." Further, Rule of Appellate Procedure 108(b) designates the date of entry of an order, for purposes of appeal, as follows:
>
>> (b) Civil orders. The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b).
>
> Pa.R.A.P. 108(b) .... Rule of Civil Procedure 236(b) describes the prothonotary's obligation to "note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents."
>
> Thus, pursuant to the express terms of the rules, an order is not appealable until it is entered on the docket with the required notation that appropriate no-

tice has been given. *See Yeaple v. Yeaple,* 485 Pa. 399, 403, 402 A.2d 1022, 1024 (1979); *see also Speight v. Burens,* [371 Pa.Super. 478,] 538 A.2d 542, 543 n. 3 (1988). *Cf. Hepler v. Urban,* 518 Pa. 482, 484–85, 544 A.2d 922, 923 (1988) (finding that, where there is no indication in the docket that notice has been provided in accordance with Rule 236, an order granting summary judgment was not final). That the parties may have received notice of the order does not alter the formal date of its entry and the associated commencement of the period allowed for appeal for purposes of the rules. The procedural requirements reflected in the rules serve to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether an appeal was perfected in a timely manner, thus eliminating the need for a case-by-case factual determination.

*Id.* at 621–22, 735 A.2d at 114 (citations omitted).

¶ 25 In *Frazier,* the appealing party had received actual notice of the order from which the appeal was filed. However, the docket indicated that the Pa.R.Civ.P. 236 notice was sent later than when actual notice was received. The appeal was filed within thirty days of the Pa.R.Civ.P. 236 notice but after thirty days of actual notice. The Supreme Court ruled that the appeal period was not triggered until the notice had been sent. *See also Stellar Construction, Inc. v. Sborz,* 561 Pa. 124, 748 A.2d 667 (2000).

¶ 26 In the present case, the notice was not sent even though Appellant had actual notice of the order. Hence, the holding of *Frazier* unquestionably applies. Indeed, it appears that in this case, the appeal period has not yet been triggered since the notice was **never** sent. However, in the interest of judicial economy, we will regard as done what should have been done and consider

the notice as having been mailed. *See Eichman v. McKeon,* 824 A.2d 305, 305 n. 1 (Pa.Super.2003). The appeal is not untimely, and it would be a waste of judicial resources to remand the matter solely for the filing of a Pa.R.Civ.P. 236 notice. Accordingly, we consider as timely the appeal from the June 10, 2002 order disqualifying counsel.

 ¶ 27 We now address the appealability of that order. Appellant invokes our jurisdiction over this interlocutory order disqualifying her counsel under Pa.R.A.P. 313, which provides that the Superior Court has jurisdiction over interlocutory orders that are considered collateral orders. The collateral order doctrine, now embodied in Pa.R.A.P. 313, "permits an appeal as of right from a non-final order if it is separable from and collateral to the main action, involves a right too important to be denied review and, if review is postponed, the right will be irreparably lost." *Gocial v. Independence Blue Cross,* 2003 PA Super 242, 827 A.2d 1216; Pa.R.A.P. 313.

 ¶ 28 Clearly, the question of whether Mr. Weiss should be disqualified as counsel is separate from the main action since an analysis of that issue does not involve any consideration of the merits of this case. *See American Independent Insurance Co. v. E.S.,* 809 A.2d 388 (Pa.Super.2002). The first requirement therefore is satisfied. In addition, if we do not review the order at this point, Mr. Weiss will not be able to proceed as counsel in this case, and the right to review the order in question will be lost irreparably. Hence, the third requirement has been met.

 ¶ 29 Finally, under the unique facts of this case, we conclude that the right is too important to be denied review. With respect to this aspect of the collateral or-

der definition, an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interest, which is the avoidance of piecemeal litigation of appeals, sought to be advanced by the final judgment rule. *Hoffman v. Knight,* 823 A.2d 202 (Pa.Super.2003).

¶ 30 In the present case, a significant factor impacts our analysis of the importance of Appellant's interest. The trial court's analysis of the disqualification issue rested in part upon its conclusion that Appellant is free to proceed with new counsel. However, the record does not support that finding. During the disqualification proceedings, Appellant filed an affidavit indicating that she is raising two children as a single mother and is not receiving support from the children's father, who is incarcerated and will be for at least four more years. Her income is limited, and Mr. Weiss has agreed to represent her in this action for an hourly rate with a maximum fee of $5,000. She cannot afford any other counsel.

¶ 31 The record establishes that Appellant will not be able to proceed with this action if present counsel remains disqualified; therefore, under the facts of this case, it is clear that Appellant's right to proceed with counsel in this action is impacted by the court's decision. Indeed, our Supreme Court has ruled in other contexts involving whether such an order is appealable that the right to counsel is a right that is too important to be denied review. *See Commonwealth v. $9,847.00 United States Currency,* 550 Pa. 192, 704 A.2d 612 (1997); *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975).

¶ 32 Further reinforcing our conclusion that the interest in the avoidance of piecemeal litigation is outweighed by Appellant's right to counsel is that this appeal also involves the propriety of an order denying Appellant's request that the matter be referred to arbitration. We have jurisdiction to address that order. Since another order, which is subject to immediate appeal, also is before us, the interest in avoiding piecemeal appeals is not implicated in this case. Thus, we conclude that the second aspect of the collateral order doctrine is satisfied.

¶ 33 We are aware of our Supreme Court's pronouncement in *Middleberg v. Middleberg,* 427 Pa. 114, 233 A.2d 889 (1967). In that case, the Supreme Court analyzed the appealability of an order disqualifying counsel. The Court noted that the order did not terminate the action, was not a final order, and thus, was not appealable. However, *Middleberg* preceded *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975), the case in which Pennsylvania adopted the collateral order doctrine.

¶ 34 In *Pittsburgh & New England Trucking Co. v. Reserve Insurance Co.,* 277 Pa.Super. 215, 419 A.2d 738 (1980), we concluded that an order refusing to disqualify counsel remained subject to the reasoning of *Middleberg.* However, in so doing, we noted that the weight of authority distinguished between an order granting disqualification and an order denying disqualification in terms of application of the collateral order exception. The weight of authority in the federal arena was that an order granting disqualification was a collateral order that could be appealed immediately.

¶ 35 In light of Appellant's financial situation and considering that this appeal is properly before us as to the order denying the motion for arbitration, we conclude that the order disqualifying counsel is subject to appeal under Pa.R.A.P. 313 in this case. *See Gocial, supra* (order allowing discovery of information purportedly subject to the attorney-client privilege is col-

lateral order). *Cf. In re N.B.*, 817 A.2d 530 (Pa.Super.2003).

¶ 36 We now consider the merits of the disqualification decision. Unquestionably, courts possess the inherent power to disqualify counsel for a violation of ethical standards. *Pirillo, supra* (trial judge, exercising power to control litigation and duty to supervise attorney's conduct to prevent egregious impropriety, can grant motion to disqualify based on breach of ethics); *see also Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584 (1975). An examination of the case law on the subject indicates that our review is plenary in these situations.

¶ 37 Under *Pirillo* and *Slater*, disqualification is appropriate where the attorney has represented the opposing party in the past and may use confidential information gained in the course of that employment or where a conflict of interest exists that may prejudice the attorney's client. In the instant case, we are not presented with either a conflict of interest or potential breach of the attorney-client privilege. Instead, Mr. Weiss was disqualified based on his breach of Rule 4.2 of the Pennsylvania Rules of Professional Conduct, which prohibits communication with a person represented by counsel. Therefore, we must apply *McCarthy v. Southeastern Pennsylvania Transportation Authority*, 772 A.2d 987 (Pa.Super.2001), where an attorney was disqualified based on a violation of the very same rule.

¶ 38 In that case, we held that a trial court's ability to disqualify counsel based on a such a violation of the Rules of Professional Conduct is severely limited and can be exercised only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires. Therein, we examined the pertinent law regarding a trial court's power to disqualify a party's counsel of choice:

> We recognize a trial court's authority to sanction counsel based on violations of the Rules of Professional Conduct. In *Commonwealth v. Lambert*, 765 A.2d 306 (Pa.Super.2000), this Court recently stated that a trial court may sanction, warn or recommend disciplinary action against an attorney who has violated a Rule of Professional Conduct. *Lambert*, 765 A.2d at 345–46. Although disqualification and removal is an appropriate sanction in some cases, it is a serious remedy "which must be imposed with an awareness of the important interests of a client in representation by counsel of the client's choice." *Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584, 590 (1975) . . . .

> A court's authority to disqualify counsel based on Rules of Professional Conduct is limited. In *In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984), our Supreme Court stated that "this court has held in several cases that counsel can be disqualified for violations of the Rules of Professional Conduct where disqualification is needed **to ensure the parties receive the fair trial which due process requires.**" *Pedrick*, 482 A.2d at 221 (emphasis added). Our Supreme Court continued:

> > Thus, while it may be appropriate under certain circumstances for trial courts to enforce the Code of Professional Responsibility by disqualifying counsel or otherwise restraining his participation or conduct in litigation before them in order to protect the rights of litigants to a fair trial, we are not inclined to extend that enforcement power and allow our trial courts themselves to use the Canons to alter substantive law or to punish attorney misconduct.

*Id.*

In addition, our Supreme Court, in *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985), limited the authority of both trial and appellate courts to sanction counsel for violations of the Rules of Professional Conduct as follows:

Perceived violations of [the Pa. R.P.C.] do not permit the trial courts or the intermediate appellate courts to alter the rules of law, evidentiary rules, presumptions or burdens of proof. **More importantly, violations of those Codes are not a proper subject for consideration of the lower courts to impose punishment for attorney or judicial misconduct.**

We have not abdicated or delegated any of our supervisory authority in enforcing these standards of conduct to Superior Court. To presume that the Code or its alleged violations can be reviewed by any tribunal other than those we authorize is a misapprehension of the purpose of the Code, and is seen as an impermissible meddling into the administrative and supervisory functions of this Court over the entire judiciary.

*Reilly,* 489 A.2d at 1299 (emphasis added). *Reilly* clearly limits the intermediate appellate and trial courts' authority to impose punishments for violations of the Rules of Professional Conduct. *Id.* at 991–92 (emphases in original). In *McCarthy,* we concluded that disqualification was not warranted since any harm caused by counsel's contact with the unrepresented person was remedied by precluding counsel from using any of the information gained from the contact, which ensured that the party seeking disqualification was not denied a fair trial.

■ ¶ 39 *McCarthy* clearly is controlling herein. Mr. Weiss could be precluded from using any information gained in the thirty-minute telephone conversation. Such a preclusionary order would be sufficient to protect Vertical's interest and prevent a denial of a fair trial. Indeed, we are puzzled by the trial court's conclusion that Mr. Weiss gained any advantage in **this** action based on this telephone conversation. The trial court indicated that Mr. Weiss utilized the conversation as a discovery tool; however, it is clear from Mr. Ford's affidavit that the only question asked about this litigation was whether Mr. Ford would voluntarily return the funds seized in reliance upon the stricken judgment. Mr. Ford responded that he would ask his own counsel. The conversation then turned to an unrelated federal matter.

¶ 40 The question presented herein is whether Vertical would be denied a fair trial in this action based on Mr. Weiss's conversation with Mr. Ford. The only issue in this action is whether the sums advanced to Appellant were loans or a return on her investment. Clearly, according to Mr. Ford's own affidavit, the subjects touched upon in the conversation with Mr. Weiss were unrelated to the instant action. In reaching this conclusion, we rely upon Mr. Ford's own representations. There is no indication in the record that Vertical would be denied a fair trial in this action to any degree if Mr. Weiss is not disqualified. Thus, we reverse the order disqualifying Mr. Weiss as counsel.

■ ¶ 41 We now address the appealability of the other ruling before us, the order denying Appellant's petition to compel arbitration. Pa.R.A.P. 311(8) grants a party an appeal as of right from any order made appealable by statute or general rule. Since the agreement at issue does not expressly provide for statutory arbitration pursuant to the Uniform Arbitration Act, 42 Pa.C.S. § 7301 *et seq.,* there is a presumption of agreement to arbitrate

pursuant to 42 Pa.C.S. § 7341 *et seq.*, common law arbitration. 42 Pa.C.S. § 7302(a). Section 7320(a)(1) of the Uniform Arbitration Act is expressly made applicable to common law arbitration pursuant to 42 Pa.C.S. § 7342(a) and provides that a party may take an appeal from an order denying a petition to compel arbitration. Thus, Appellant may appeal as of right from the order denying her motion to compel common law arbitration. *Levy v. Lenenberg,* 795 A.2d 419 (Pa.Super.2002).

¶ 42 Our review of a claim that the trial court improperly denied a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. *Id.* The following standards apply to judicial review of a request for arbitration:

> When one party to an agreement to arbitrate seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the question of whether an agreement to arbitrate was entered into and whether the dispute falls within the scope of the arbitration provision. Thus a party who can establish that he did not agree to arbitrate, or that the agreement to arbitrate, limited in scope, did not embrace the disputes in issue, may be entitled to enjoin ... arbitration proceedings.

*Ross Development Co. v. Advanced Building Development, Inc.,* 803 A.2d 194, 196–97 (Pa.Super.2002) (quoting *Kardon v. Portare,* 466 Pa. 306, 309–10, 353 A.2d 368, 369 (1976)); *see also Flender Corp. v. Tippins Int'l, Inc.,* 2003 PA Super 300, 830 A.2d 1279.

¶ 43 In the present case and on the basis of the record before us, we cannot conclude that the trial court abused its discretion in deciding that the present action is not within the scope of the agreement to arbitrate. Appellant's petition indicates that the agreement provides for arbitration of matters "relating to, and arising from the interpretation, application, performance or breach" of the partnership agreement. This civil action involves whether the payments made by Vertical were partnership distributions or loans. Without the entire partnership agreement in the record and thus properly before us to examine, we are not able to determine if the matter does involve the interpretation, application, performance, or breach of that agreement. *Keystone Technology Group Inc. v. Kerr Group Inc.,* 824 A.2d 1223 1228, n. 6 (Pa.Super.2003) (documents that were not included in the certified record could not be considered on appeal). Hence, we must affirm the trial court.

¶ 44 Order disqualifying counsel is reversed and remanded.[2] Order denying arbitration is affirmed. Case remanded. Jurisdiction relinquished.

---

2. Upon remand, the trial court is free to enter an appropriate sanction.