J-A20036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF G.L.P., A MINOR<br>IN THE INTEREST OF C.L.P., A MINOR | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| APPEAL OF: G.P.T. AND C.L.R.,<br>BIOLOGICAL PARENTS | |
| Appellant | No. 3485 EDA 2014 |

Appeal from the Order Entered on October 31, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at Nos.:     CP-51-DP-0002355-2013
                                              CP-51-DP-0002361-2013

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 12, 2015**

G.P.T. ("Mother") and C.L.R. ("Father") (collectively "Parents") appeal the October 31, 2014 order that denied their motion in this dependency case involving their children, C.L.P. (born in January 2010) and G.L.P. (born in June 2013) (collectively "Children").  In the motion, Parents sought to vacate the trial court's findings of dependency and of aggravated circumstances, to re-open the record for the dependency hearing, and for reconsideration of the court's order denying the entry of an appearance by one of Parents' attorneys.  After careful review, we affirm in part and reverse in part.

The trial court set forth the factual and procedural history as follows:

On November 22, 2013, the Department of Human Services ("DHS") received a Child Protective Services ("CPS") report alleging that [G.L.P.] was taken to the Children's Hospital of

Philadelphia ("CHOP") Emergency Room for a seizure-like episode. The report further alleges that Mother took [G.L.P.] to CHOP Emergency Room because on November 21, 2013, [G.L.P.] was having difficulty opening his eyes, was non-responsive, and was stiff when Mother picked him up. The report allege[d] that Mother stated that [G.L.P.'s] two-year-old cousin had pulled [G.L.P.] off the bed two months prior to this incident causing [G.L.P.] to hit his head on a wooden floor. The report alleged that [G.L.P.] was found to have a mixed brain density subdural hematoma with a mid-line shift. The findings at CHOP were indicative of non-accidental trauma. [G.L.P.] was given a full physical at CHOP by Dr. Stephanie Deutsch. Dr. Deutsch determined that [G.L.P.] was in critical condition but was expected to survive and the injury was certified as a near fatality. Subsequently, [G.L.P.] was admitted to the Intensive Care Unit ("ICU") at CHOP. Parents did not have any explanation for the recent trauma to [G.L.P.]. The CPS Report also alleged that Mother stated that she is the primary caregiver for [Children] and that both parents live with both children. On November 22, 2013, an Order for Protective Custody ("OPC") was obtained for [C.L.P.] due to [G.L.P.'s] unexplained injuries. On November 26, 2013, an OPC was obtained for [G.L.P.] since DHS learned that he would be discharged from CHOP that day. DHS further learned that maternal cousin, and his wife, were willing to care for [Children] and that Father had also agreed to a home assessment. On November 27, 2013, DHS visited Parents' home and learned that three other adults lived in the home, [and] that the adults rented rooms within the home. On November 27, 2013, DHS visited the home of maternal cousin and learned that the home was appropriate, that there were two additional children in the home, and that there was a room ready for [Children,] but DHS was unable to clear the family members because they did not have social security numbers.

On November 29, 2013, a shelter care hearing was held and the trial court lifted the OPC and ordered the temporary commitment to DHS to stand. On December 3, 2013, DHS filed a Dependency Petition indicating that there was a sufficient basis to find that aggravated circumstances exist[ed] pursuant to 42 Pa.C.S.A. § 6302(2). On March 24, 2013, the trial court adjudicated the [Children] dependent pursuant to paragraph[] (1) of the definition of a "Dependent Child" under 42 Pa.C.S.A. § 6302. The court found aggravated circumstances pursuant to the Juvenile Act[,] 42 Pa.C.S.A. § 6302(2)[,] and found Parents

as perpetrators of child abuse pursuant to 23 Pa.C.S.A. § 6303(b)(i) and 23 Pa.C.S.A. § 6303(d). It should be noted that at the adjudication trial on March 24, 2014, both Father and Mother were represented by privately retained counsel, Donald Benedetto and Clint Orem respectively. On April 23, 2014, Father's privately retained attorney, Mr. Benedetto, Esquire, filed a Notice of Appeal appealing the Order entered on March 24, 2014. Mr. Benedetto also filed a Motion for Reconsideration, which was denied on April 29, 2014. On May 20, 2104, Mr. Benedetto withdrew Father's Notice of Appeal and requested to withdraw his representation of Father. Thereafter, Parents obtained private counsel Karenina Wolff, Esquire, to represent both Mother and Father. On June 20, 2014, three months after the Order adjudicating the [Children] dependent, Ms. Wolff filed an untimely Motion for Reconsideration to Reopen Order of Aggravated Circumstances and Adjudication, which was denied on August 7, 2014. On October 23, 2014, an unknown attorney, Mark D. Freeman, Esquire, sent an inappropriate email to Judge Fernandes, the law clerk to Judge Fernandes, the City Solicitor, the Child Advocate, Grandparent's attorney, and Ms. Wolff. The law clerk to Judge Fernandes intercepted the email and gave notice to the Judge. This email contained confidential information that attorneys of record in this matter had not seen before and unsubstantiated allegations. Mr. Freeman claimed that he "intended to enter his appearance to represent Parent[s'] along with Ms. Wolff," although Mr. Freeman was unknown to the court and never attended any hearings on behalf of Parents. On October 28, 2014, over five months after the March 24, 2014, Order was entered, Ms. Wolff again filed another untimely Motion to Vacate the Court's Finding of Dependent, Vacate the Court's Finding of Aggravated Circumstances, and Reopen the record for the dependency hearing ["Motion to Vacate"], essentially, a third Motion for Reconsideration. On October 31, 3014, a permanency review hearing and a hearing for the Motion were held. At this hearing, Ms. Wolff stated that Mr. Freeman was her co-counsel. However, the trial court denied appointment of co-counsel because Ms. Wolff did not follow the proper procedures nor did she comply with the rules to have Mr. Freeman as co-counsel. Parents['] Motion before the court was denied with prejudice.

Trial Court Opinion ("T.C.O."), 3/16/2015, at 1-3 (citations to record omitted).

On November 26, 2014, Parents filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On March 16, 2015, the trial court filed a Pa.R.A.P. 1925(a) opinion.[1]

Parents raise two issues for our review:

I.     Did the trial court violate Parents' due process rights, the expressly stated purposes of the Juvenile Act, and Title 42 Pa.C.S.A. § 6351(e)(1), relating to Permanency Review hearings by dismissing Parents' Motion to Vacate the Court's Findings of Dependency, to Vacate the Court's Finding of Aggravated Circumstances and to Reopen the Record for the Dependency Hearing Based on Dr. Deutsch's Fraudulent Testimony to the Court and New Evidence Obtained by Natural Parents?

II.    Did the trial court violate Parents' due process right to an attorney under 42 [Pa.]C.S.A. § 6337 and abuse its discretion by denying Attorney Mark Freeman's Entry of Appearance?

Parents' Brief at 8 (issues reordered).

---

[1]     The Rule 1925(a) opinion and certified record were due to this Court on December 26, 2014, pursuant to the rule for Children's Fast Track cases. **See** Pa.R.A.P. 1931(a)(2). However, the trial court, despite repeated delinquent record notices and requests from this Court, did not file its opinion until March 16, 2015. This Court received the certified record two days later. The trial court's inaction resulted in an almost three-month delay in the scheduling of this case.

Parents challenge the denial of their motion to vacate the dependency and the finding of aggravated circumstances. The trial court, relying upon 42 Pa.C.S.A. § 5505, found that the motion was filed more than thirty days after entry of the order and that it did not have jurisdiction to modify or vacate the dependency adjudication. T.C.O. at 6-7. Here, Children were adjudicated dependent on March 24, 2013. The instant motion was filed on October 28, 2013, seven months after the adjudication and three months after Parents' second motion for reconsideration.

Parents provide no specific authority to support their position that the trial court could vacate the order seven months after its entry. Instead, Parents argue generally that a court may grant a new trial upon the basis of after-discovered evidence. Parents' Brief at 46-48. Parents also argue that the trial court may reopen an order for extraordinary cause. *Id.* at 49-50. Finally, Parents argue that the court refused to hear new evidence at the permanency review hearing in violation of 42 Pa.C.S.A. § 6351. *Id.* at 55-56. We address these arguments in turn.

In arguing that the order could be rescinded upon the basis of after-discovered evidence, Parents rely upon *In re Estate of Roart*, 568 A.2d 182, 187-88 (Pa. Super. 1989). In that case, in which a petitioner sought review of an orphans' court adjudication, this Court stated:

> The grant or refusal of a new trial or by analogy the opening of an adjudication in the orphans' court on the grounds of after-discovered evidence is discretionary with the trial court and will not be reversed on appeal except for an abuse of discretion. To justify the grant of a new trial on the basis of after[-]discovered

- 5 -

evidence, the evidence must have been discovered since the trial and must be such as would not have been obtainable by the use of reasonable diligence and must not be cumulative or merely go to impeach the credibility of a witness. The after-discovered evidence must also be likely to have compelled a different result. In addition, a review of an adjudication based on after-discovered evidence is not a matter of right, but rests in the sound discretion of the court. This discretion is to be exercised cautiously and sparingly and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause.

*Id.* at 187-88 (citations and quotation marks omitted).

The "after-discovered evidence" at issue here is an expert report obtained by Parents on October 25, 2014. Motion to Vacate, 10/28/2014, ¶¶ 2-3. The report allegedly contradicted Dr. Deutsch's testimony regarding the etiology of G.L.P.'s injuries. *Id.* at ¶¶ 15-20, 22-24, 26-29. Although this report was obtained after the dependency adjudication, Parents have presented no argument why it "would not have been obtainable by the use of reasonable diligence" prior to trial. **See Roart**, *supra*. In fact, Parents concede that it could have been obtained prior to trial. Parents' Brief at 47.

Instead, Parents assert that prior counsel "failed to exercise reasonable due diligence." **Id.** We may regard this as a claim that prior counsel provided ineffective counsel. However, Parents have not developed this argument. Instead, Parents merely state that prior counsel could have obtained an expert to dispute Dr. Deutsch's testimony and that Parents' lack proficiency in the English language meant that they did not understand the proceeding or counsels' deficiency. **Id.**

We require more to entertain such an argument. Parents do not cite any case law suggesting the standard for ineffective assistance of counsel or supporting their position that counsel was ineffective. For lack of citation to authority and development, we must find any argument that prior counsel was ineffective to be waived. **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").[2] Because their ineffectiveness of counsel argument is waived and Parents offer no other valid reason why the expert report could not have been obtained before trial, we find no merit to the argument that a new hearing should have been granted upon the basis of after-discovered evidence.

Parents also argue that, pursuant to section 5505, an order may be revisited beyond thirty days for extraordinary cause. We have defined extraordinary cause as "an oversight or action on the part of the court or the judicial process which operates to deny the losing party knowledge of the entry of final judgment so that the commencement of the running of the appeal time is not known to the losing party." **Manufacturers & Traders**

---

[2] If the claim were not waived for lack of development, we would also find it waived because Parents did not include any claim of ineffectiveness of counsel in their Rule 1925(b) concise statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [concise statement] . . . are waived").

***Trust Co. v. Greenville Gastroenterology, SC***, 108 A.3d 913, 919 (Pa. Super. 2015). "[M]istakes or ordinary neglect by counsel do not constitute extraordinary circumstances. . . . We have also held that extraordinary cause does not exist where a party has notice of the entry of a final order." ***Id.***

Here, the only extraordinary cause cited by Parents is the medical report that disputes Dr. Deutsch's testimony. This material, which could have been obtained earlier, does not constitute the type of extraordinary cause as defined in our precedent. Parents were aware of the dependency adjudication. In fact, they filed a notice of appeal from that order before withdrawing their appeal. This claim does not merit relief.

Finally, Parents assert that the trial court violated 42 Pa.C.S.A. § 6351(e)(1), because the statute provides that the court shall determine "the extent of progress made toward alleviating the circumstances that necessitated the original placement of the children." Parent's Brief at 55. Parents argue that the medical report is evidence that G.L.P.'s injuries were not caused by abuse, which alleviates the need for placement. ***Id.*** at 55-56.

The statute provides as follows:

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. If the court does not consult

- 8 -

personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian *ad litem* under section 6311 (relating to guardian *ad litem* for child in court proceedings) or, as appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court.

42 Pa.C.S.A. § 6351(e).

Our review of the hearing transcript demonstrates that the trial court reviewed the placement of Children, their safety in their current placement, their developmental and medical progress, and C.L.P.'s wishes regarding reunification with Parents. Further, the court heard testimony regarding Parents' compliance with their service plans and the difficulty that DHS had in obtaining services for Parents given their lack of English proficiency and their lack of social security numbers. We find nothing unusual about the permanency hearing and find no error by the trial court in its compliance with section 6351(e).

Further, during the dependency hearing, which was held prior to arguments on Parents' motion, Parents did not attempt to introduce their expert's report or testimony. Parents cannot claim that the trial court erred in failing to consider the report in determining whether placement was still necessary at the permanency hearing when Parents did not even attempt to introduce the evidence.

Finding no merit in Parents' arguments, the trial court necessarily did not err in denying Parents' motion to vacate the dependency adjudication or

the finding of aggravated circumstances when it was filed more than thirty days after entry of the orders.

Parents also challenge the denial of Attorney Freeman's entry of appearance. Parents argue that the trial court denied them due process when it denied his entry of appearance. Parents assert that Attorney Freeman complied with Pa.R.J.C.P. 1150 when he entered his appearance and that the trial court did not specify what rules Attorney Freeman did not follow when it denied his appearance. Parents contend that no rules related to confidentiality or conflicts of interest were violated by Attorneys Freeman and Wolff. Finally, Attorney Freeman contends that he did not engage in *ex parte* communication with the court, because the email he sent was copied to all relevant parties. Parents' Brief at 33-41.

"When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review." *Vertical Res., Inc. v. Bramlett*, 837 A.2d 1193, 1201–02 (Pa. Super. 2003). We agree with Parents that the trial court has cited no authority by which it could deny Attorney Freeman's appearance. However, we have held that:

> [c]ourts may disqualify attorneys for violating ethical rules. On the other hand, courts should not lightly interfere with the right to counsel of one's choice. Thus, disqualification is appropriate "only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires."

*Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 80 (Pa. Super. 2005) (citations omitted).

- 10 -

In discussing the disqualification of an attorney, we said:

a trial court's ability to disqualify counsel based on . . . a violation of the Rules of Professional Conduct is severely limited and can be exercised only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires. [In *McCarthy v. Southeastern Pennsylvania Transportation Authority*, 772 A.2d 987 (Pa. Super. 2001)], we examined the pertinent law regarding a trial court's power to disqualify a party's counsel of choice:

> We recognize a trial court's authority to sanction counsel based on violations of the Rules of Professional Conduct. In *Commonwealth v. Lambert*, 765 A.2d 306 (Pa. Super. 2000), this Court recently stated that a trial court may sanction, warn or recommend disciplinary action against an attorney who has violated a Rule of Professional Conduct. *Lambert*, 765 A.2d at 345-46. Although disqualification and removal is an appropriate sanction in some cases, it is a serious remedy "which must be imposed with an awareness of the important interests of a client in representation by counsel of the client's choice." *Slater v. Rimar, Inc.*, 338 A.2d 584, 590 (Pa. 1975). . . .
>
> A court's authority to disqualify counsel based on Rules of Professional Conduct is limited. **In *In re Estate of Pedrick*, 482 A.2d 215 (Pa. 1984), our Supreme Court stated that "this court has held in several cases that counsel can be disqualified for violations of the Rules of Professional Conduct where disqualification is needed to ensure the parties receive the fair trial which due process requires.**" *Pedrick*, 482 A.2d at 221 (emphasis added). Our Supreme Court continued:
>
>> Thus, while it may be appropriate under certain circumstances for trial courts to enforce the Code of Professional Responsibility by disqualifying counsel or otherwise restraining his participation or conduct in litigation before them in order to protect the rights of litigants to a fair trial, we are not inclined to extend that enforcement power and allow our trial courts themselves to use the Canons to alter substantive law or to punish attorney misconduct.

**Id.**

**Vertical Res., Inc.**, 837 A.2d at 1201 (citations modified, emphasis in original).

Instantly, the trial court stated that it disqualified Attorney Freeman because he sent an *ex parte* email to the court, and because he did not have a retainer agreement with Parents. The trial court also reprimanded Attorney Wolff for sharing information with Attorney Freeman and for failing to obey the rules of court and professional conduct. The court also cited Parents' limited proficiency in English and a need to protect Parents' interests. T.C.O. at 5.

First, any alleged violations of the rule of professional conduct by Attorney Wolff would go to her disqualification or reprimand, not to Attorney Freeman's appearance. Thus, we reject those findings by the trial court. Second, we can find no case law that supports a disqualification for *ex parte* communication by an attorney with the court. Furthermore, Attorney Freeman disputes that the communication was *ex parte*, stating that it was sent to all counsel along with the court. Parents' Brief at 40-41. Indeed, as demonstrated by the fact that the child advocate raised the issue of the email, at least one other party actually received it. Notes of Testimony ("N.T."), 10/31/2014, at 6-7. The trial judge also noted that his law clerk

intercepted the email. T.C.O. at 3. Therefore, we must conclude that that email, even if inappropriate,[3] did not influence the trial court.

The trial court stated that co-counsel are not permitted. N.T. at 8. However, the trial court cites no rule for that conclusion, and we can find none. Further, had the court been concerned that Parents did not understand fully the implication of having co-counsel and any conflicts that could arise from such an arrangement, the trial court had the opportunity to colloquy Parents because they and their interpreter were present at the permanency review hearing. The trial court did not do so.

Disqualification of a party's chosen counsel is a severe act. There is no evidence in this record that court did not have other less dramatic options. Given the record before us, we cannot conclude that disqualifying Attorney Freeman was a remedy commensurate with any alleged ethics violations or necessary to ensure a fair hearing. Thus, we find that the trial court erred.

The next question concerns the correct remedy. Although we have ordered a new trial in prior cases, we held that "if that ruling [to disqualify counsel] had a harmful effect upon the outcome of the case, the only remedy is to grant a new trial." *McCarthy v. Se. Pennsylvania Transp.*

_____

[3] The email was not made part of the certified record and therefore, cannot be considered by this Court. *See Commonwealth v. McBride*, 957 A.2d 752, 757 (Pa. Super. 2008) ("[A]n appellate court is limited to considering only the materials in the certified record when resolving an issue.").

*Auth.*, 772 A.2d 987, 995 (Pa. Super. 2001).   Here, however, Attorney Freeman's presence or absence could not change the fact that Parents' motion was filed outside of the time in which the trial court could modify its order.   Because Attorney Freeman's exclusion could have had no harmful effect on the outcome at the permanency hearing, we will not grant a new hearing.   However, going forward and provided that Attorney Freeman complies with all relevant rules and procedures to enter his appearance, Attorney Freeman may appear as co-counsel for Parents.   Therefore, we reverse the trial court's October 31, 2014 order denying Attorney Freeman's entry of appearance and affirm the order in all other respects.

Order affirmed in part, reversed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2015