J-A16016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALBERT DETILLO AND TAMARA DETILLO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| ELIZABETH HUZDOVICH, | |
| Appellant | No. 941 WDA 2015 |

Appeal from the Order Dated May 14, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD94-006674-008

| | |
|---|---|
| ALBERT DETILLO AND TAMARA DETILLO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ELIZABETH HUZDOVICH, F/K/A ELIZABETH DETILLO, | |
| APPEAL OF: TAMARA DETILLO, | |
| Appellant | No. 993 WDA 2015 |

Appeal from the Order May 14, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-94-006674-008

BEFORE: SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

_____

[*] Retired Senior Judge assigned to the Superior Court.

J-A16016-16

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 20, 2016**

Appellant Elizabeth Huzdovich, formerly Elizabeth Detillo ("Wife"), brought this appeal from the May 14, 2015 equitable distribution order directing her to convey her rights to certain real property located in Mercer County, Pennsylvania, to Appellees Albert Detillo ("Husband") and Husband's spouse, Tamara Detillo ("Tamara") upon Husband's payment of $10,000.00 to Wife. Tamara filed a cross-appeal concerning her rights to the same property. After careful review, we affirm.

The trial court outlined the relevant factual and procedural history as follows:

> Husband and Wife married in 1964. The parties acquired 3 parcels of real estate in Mercer County (hereinafter "the Farm") during the marriage. Husband left Wife in 1988. Wife moved from the Farm by 1991, which sat empty and deteriorating until Husband returned to live there in 1995.

> Husband filed a Divorce Complaint in June of 1994. Wife raised claims for equitable distribution, alimony, APL and counsel fees. A divorce decree was entered in August of 1995. The Court retained jurisdiction over Wife's pending claims, including equitable distribution. Husband identified those claims on his Praecipe to Transmit the Record.

> Both parties have been remarried for over 14 years. Their children are grown. Both Husband and Wife are retired and both suffer from significant health issues.

> For seventeen years, Wife did not pursue the claims she raised in the divorce action. Likewise, Husband did not challenge the monthly alimony *pendent lite* (APL) he continued to pay until 2014, amounting to approximately $80,640.00.

> Sometime in 2012, Husband sent Wife a Marital Settlement Agreement which she did not execute. Instead, on June 22, 2012, Wife filed her Inventory and Marital Asset

- 2 -

Summary and a Praecipe for Husband to do the same. Husband did so. He also filed a Motion to Dismiss based on the Doctrine of Laches, predicated on Wife's significant delay in pursuing her claims. I held a hearing on that motion on January 28, 2014. At that preliminary stage, I ruled that laches did not bar Wife from presenting her claims.

On November 16, 2012, Husband's new wife, Tamara[,] was joined as an indispensable party to the litigation because her property rights would necessarily be affected by the litigation's outcome. The three parties engaged in protracted and contested discovery. Ultimately a trial was held March 18 and 19, 2015.

The essential issues at trial were Wife's claims for equitable distribution and attorney fees, as well as Husband's defenses to the same and his request for a credit for previously paid APL. The property to be distributed was the Farm, the value of farm equipment which Wife had previously auctioned, and the possible gas and mineral rights. Both parties presented appraisals regarding the value of the Farm at date of separation, date of divorce, and as of 2013.

Neither party's appraisal contained a valuation of gas or other mineral rights. There is no current drilling on the property. I took judicial notice of the fact that there is shale drilling in Mercer County. Husband testified he has no intentions of exploring that option, although he did explore the possibility at one time.

After consideration of the factors set forth in the Divorce Code at 23 Pa.C.S.A. §3502, I determined that a 50/50 split of the marital estate was appropriate. I valued the Farm as of the date of divorce based on the equities of the case, as well as the Doctrine of Laches, which I found applicable, and distributed it to Husband. I assigned the value of the farm equipment auctioned by [Wife] to her.

I assigned no value to the mineral rights as neither party provided valuations of same. I found it speculative, to assume that there is natural gas to be had or that any future lease would be profitable. I found it would be prejudicial to Husband and Tamara to force drilling, which is contrary to their expressed

wishes, due to Wife's belated assertion of her interest in the Farm.

I provided Husband a credit for APL payments made after Wife's remarriage. As noted above, Husband had paid APL to Wife for over 20 years, even after her remarriage in 2001. I denied any claims for attorney fees and alimony. Once the property was valued and Husband's credit was applied, Husband was ordered to pay an equalization payment to Wife of $10,757.00.

On June 10, 2015, Wife filed a Motion for Clarification and Reconsideration. I denied the majority of her requests but expressly granted reconsideration regarding oil and gas rights. My Order on Reconsideration modified the May 12, 2015 Order as follows:

> "If and only if and to the extent that Mr. and Mrs. Detillo pursue oil and gas rights, Mrs. Huzdovich is hereby granted a 1/3 interest in said profits. Mrs. Huzdovich's interest is extinguished on transfer of the property in an arm's length sale to a bona fide third party purchaser or on her death."

Wife appealed at 941 WDA 2015 on June 16, 2015. Tamara cross-appealed at 993 WDA 2015. On July 1, 2015, Husband filed a Motion to Quash Wife's appeal, which was denied by the Superior Court.[1]

Trial Court Opinion, 9/21/15, at 1–4.

## 941 WDA 2015 – Wife's Appeal

Wife raises the following issues on appeal:

A. Did the Lower Court erroneously fail to follow established precedent that requires that real estate be valued, for purposes

_____

[1] On August 12, 2015, a *per curiam* panel of this Court denied Husband's motion to quash without prejudice to his right to raise the issue on the merits. The timeliness of Wife's appeal, the subject of that motion, is discussed *infra*.

of equitable distribution, as of the date of trial and erroneously applied the doctrine of laches as justification for using the date of the divorce for purposes of valuing the parties' real property?

B. Did the Lower Court erroneously apply the *doctrine of laches* to credit [Husband], for purposes of equitable distribution, with the alimony pendente lite (APL) he paid from August 19, 2001 to the time of trial in the amount of $41,440.00?

C. In deciding A and B above did the lower court ignore the import of the legal principle of "the law of the case" by using the principle of laches to justify its rulings on both the real property and APL issues, thereby ignoring its prior refusal to [Husband's and Tamara's] request to dismiss [Wife's] claims for economic relief on the basis of her having committed laches?

D. Did the Lower Court fail to recognize and protect [Wife's] interest in the oil and gas rights associated with the real estate?

E. Did the Lower Court fail to credit Wife with items of farm equipment (i.e. a Case IH 686 Tractor and Brush Hog) left on the property in 1991 for the benefit of Husband by the Wife to offset the items of equipment sold by Wife at auction?

F. Did the Lower Court erroneously credit [Husband] with expenditures made to prepare the real estate for farming operations by [Husband] that neither enhanced the value of the real estate nor contributed to the farm making a profit?

G. Did the Lower Court err in denying [Wife's] Motion For Reconsideration and Clarification of the foregoing assignment of errors listed in A through F inclusive even though the Court addressed gas and oil rights to a limited extent in its order of court dated June 10, 2015?

Wife's Brief at 10–11.

We consider first whether Wife's appeal was timely. Husband filed a motion to quash the appeal filed on June 16, 2015, claiming that it was filed more than thirty days after judgment was entered on May 14, 2015. Facially, Husband is correct; however, our law is clear that the time for filing

an appeal does not commence until "(1) the order has been entered on the appropriate docket, and (2) a notation appears in the docket that proper notice has been given concerning the entry of the order." *Jara v. Rexworks Inc.*, 718 A.2d 788, 791 (Pa. Super. 1988). It is inconsequential that the parties had actual notice of the order, and it does not matter when the parties received actual notice. *Vertical Resources, Inc. v. Bramlett*, 837 A.2d 1193, 1199 (Pa. Super. 2003). The notice required under Pa.R.C.P. 236[2] must be provided and docketed before an order is considered "entered." *Jara*, 718 A.2d at 791.

In *Frazier v. City of Philadelphia*, 735 A.2d 113 (Pa. 1999), the Pennsylvania Supreme Court determined that:

> Rule of Appellate Procedure 301(a) provides that "[n]o order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court." Further, Rule of Appellate Procedure 108(b) designates the date of entry of an order, for purposes of appeal, as follows:
>
> > **(b) Civil orders.** The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b).

---

[2] Pennsylvania Rule of Civil Procedure 236(a)(2) mandates that "[t]he prothonotary shall immediately give written notice of the entry of any . . . order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order, decree, or judgment." Pa.R.C.P. 236(a)(2).

Pa.R.A.P. 108(b). As previously noted, Rule of Civil Procedure 236(b) describes the prothonotary's obligation to "note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents."

Thus, pursuant to the express terms of the rules, an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given. That the parties may have received notice of the order does not alter the formal date of its entry and the associated commencement of the period allowed for appeal for purposes of the rules. The procedural requirements reflected in the rules serve to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether an appeal was perfected in a timely manner, thus eliminating the need for a case-by-case factual determination.

*Frazier*, 735 A.2d at 115 (citations omitted).

In the instant matter, even though it is apparent that Wife had actual notice of the trial court's order, the record does not reflect that proper Rule 236 notice was sent to the parties. Technically, then, the appeal period has not been triggered in this case. Nonetheless, in the interest of judicial economy, we regard "as done that which ought to have been done" and proceed accordingly. *See Vertical Resources*, 837 A.2d at 1199 (explaining that it is a waste of judicial resources to remand a matter for the sole purpose of requiring that Rule 236 notice be provided to perfect a notice of appeal). Thus, we deem Wife's appeal timely.

Wife first argues that the trial court's earlier ruling on February 5, 2014, denying Husband's motion to dismiss based upon the doctrine of laches, was the law of the case that precluded the trial court from later applying the principles of laches to justify its rulings on the real property and

alimony *pendente lite* issues. Wife, however, did not include this issue in her Pa.R.A.P. 1925(b) statement; therefore, it is waived. ***See*** Pa.R.A.P.1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived"); ***see also McKeeman v. CoreStates Bank, N.A.,*** 751 A.2d 655, 658 (Pa. Super. 2000) ("An appellant's failure to include an issue in his [Rule] 1925(b) statement waives that issue for purposes of appellate review.").

Even if not waived, Wife would not be entitled to relief. We have held that the law of the case doctrine does not apply in certain procedural postures.

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

***Parker v. Freilich***, 803 A.2d 738, 745 (Pa. Super. 2002) (quoting ***Riccio v. American Republic Ins. Co.,*** 705 A.2d 422, 425 (Pa. 1997)).

When the trial court herein adjudicated Husband's motion to dismiss Wife's equitable distribution claims, it was compelled to view the evidence favorably to Wife. ***See Gaboury v. Gaboury***, 988 A.2d 672, 675 (Pa. Super. 2009) (courts must consider the evidence in the light most favorable to the non-moving party when deciding a motion to dismiss). After a hearing on the motion and review of the parties' legal submissions, the trial

- 8 -

court "ruled that laches was not applicable as a matter of law. . . ." Trial Court Opinion, 9/21/15, at 5. However, after the trial on the economic claims, the trial court determined that laches operated to limit Wife's entitlement to the assets of the marital estate. The trial court explained the reason for its application of the doctrine after trial, as follows:

> Husband first raised the doctrine of laches as an affirmative defense in 2012. The issue was extensively briefed and argued by the parties. I found that Wife's delay of over seventeen years demonstrated a lack of due diligence, meeting the first condition. I found laches did not wholly bar Wife's claims from being presented. Husband acknowledged that equitable distribution was unresolved by listing the unresolved issues in his Praecipe to Transmit the Record in 1995, by paying APL for 17 years, and by sending a Marital Settlement Agreement in 2012. I, therefore, found that the second prong of the test was not met, as a matter of law. I found there was no prejudice to Husband in allowing Wife's claims to go forward when he had specifically acknowledged them.
>
> Although, at the pleading stage, I ruled that laches was not applicable as a matter of law, once the evidence of the case was presented, I made the decision to apply the doctrine based on those facts. I found the second prong of the test for the applicability of the doctrine of laches was, in fact, met, as Husband was able to demonstrate, through the factual evidence, that Wife's failure to act for 17 years "worked a prejudice" to him, and to Tamara.

*Id*. at 4–5.

The trial court acted well within its discretion when it re-evaluated whether laches should apply after considering all the evidence presented at trial. First, at the motion to dismiss stage, the trial court ruled that the doctrine of laches did not bar Wife's claim outright. Its decision on application of laches after trial was different in that it applied the doctrine

only to effectuate an equitable distribution of the marital estate. Second, at the motion to dismiss stage, the trial court was required to view the evidence favorably to Wife. That same preference was not afforded to Wife's evidence presented at trial.

Finally, we observe that one of the rules encompassed within the "law of the case" doctrine is the coordinate jurisdiction rule. Simply stated, "judges of coordinate jurisdiction should not overrule each other's decisions." *Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003). In the matter before us, the coordinate jurisdiction rule was not implicated or violated because the same judge decided both the motion to dismiss and the ultimate resolution of the economic claims. Thus, Wife's law of the case argument is not legally cognizable.

Wife next contends that the trial court erred when it valued the real property as of the date of the divorce and reasoned this decision on principles of laches. Whether laches applies is a question of law. *United National Insurance Co. v. J.H. France Refractories Co.,* 668 A.2d 120, 124 n.4 (Pa. 1995). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Stamerro v. Stamerro,* 889 A.2d 1251, 1257 (Pa. Super. 2005) (quotation marks and citation omitted). However, we are bound by the trial court's

credibility determinations. *Id.* at 1257–1258 (citing *Wade v. Huston*, 877 A.2d 464 (Pa. Super. 2005)).

In *Fulton v. Fulton*, 106 A.3d 127 (Pa. Super. 2014), we outlined the parameters of the doctrine of laches, as follows:

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case.

> *Estate of Scharlach*, 809 A.2d at 382–383 (quoting *Sprague*, 550 A.2d at 187–188). Moreover,

> [t]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

> *Commonwealth ex rel. Baldwin v. Richard*, 561 Pa. 489, 751 A.2d 647, 651 (2000) (internal citations omitted).

*Fulton*, 106 A.3d at 131.

We observe at the outset that the trial court did not conclude that laches barred Wife from obtaining any relief in this matter. Rather, the trial court explained that it deemed the doctrine of laches applicable in determining the date of valuation of the subject real property, reasoning:

In the seventeen years during which Wife failed to assert any interest in the marital estate, Husband married Tamara and began to improve the Farm. According to their credible testimony, they graded and plowed the land and planted crops to vastly improve the soil. They diverted water to make the land and buildings usable, repaired and built structures on the land, and in other ways made the previously undeveloped land suitable for agricultural farming, as it is used by them today.

Husband and Tamara made significant repairs and improvements to the house and other buildings on the property as well. To do so, they took out significant mortgages and loans which they have paid back and/or refinanced over the years. Husband and Tamara have paid all taxes and other expenses on the Farm throughout the years; Wife has not contributed. Wife did not express any interest in ownership of the Farm any time the parties communicated over the years.

While I found Wife retained an equitable interest in the marital real estate, she forfeited any right to the increased value of the Farm because the doctrine of laches was invoked. Husband and Tamara would not have incurred the significant debt they did nor worked on the Farm as they did were it not that for their reasonable belief that Wife would not pursue equitable distribution of the Farm and attempt valuation at date of distribution.

Rather than valuing the Farm at the date of distribution as is customarily favored, I valued it at the time of the parties' divorce, finding Wife was not entitled to the increase in value because of the applicability of the doctrine of laches. Wife argues this violates "established precedent that requires that real estate be valued, for purposes of equitable distribution, as of the date of trial."

There is a preference for valuing marital assets at or near the time of distribution, but courts have recognized there may be circumstances where it is more appropriate to value marital assets as of the date of separation. *See, Smith v. Smith*, *653 A.2d 1259, 1270 (Pa. Super. 1995)*. The Divorce Code does not specify the time at which marital assets must be valued, leaving the date of valuation to the trial court's discretion. As the Superior Court has stated: "[W]e do not attempt ... to establish a valuation to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of

the necessary discretion required to effectuate economic justice." *Diamond v. Diamond*, *519 A.2d 1012, 1017 (Pa. Super. 1987)*. Wife herself acknowledged that land may be valued "at different times along a time line." In this case, I found the earlier valuation effectuated economic justice, because laches was applicable to prevent prejudice to Husband and Tamara, who had reasonably relied on Wife's inaction as evidence that she had no interest in pursuing the Farm.

In *Doppler v Doppler*, *574 A.2d 1101 (Pa. Super. 1990)*, the Superior Court addressed a case similar to this one in many ways. In *Doppler*, the husband waited 20 years before attempting to complete a partition action begun after the parties divorced. The court stated that because he had waited so long, his ex-wife was lulled into believing he had relinquished any rights to the property. The court stated: "[I]t would work to her prejudice to allow Mr. Doppler to benefit from the increase in the property's value during his twenty years of inaction." *Doppler* at 1106.

Here, it was incumbent on Wife to move her claim for equitable distribution forward. She did not do so for an unreasonable period of time. Her inaction caused Husband to believe she had abandoned her claim and so he, and Tamara, bore the costs of maintaining and improving the property. To allow Wife to assert a claim to the present value would work a great prejudice to Husband and Tamara. Accordingly, I applied the doctrine of laches and valued the Farm at the time of the parties' divorce.

Trial Court Opinion, 9/21/15, at 5–7 (footnote and record references omitted).

While the question of whether laches applies is a purely legal one, we also are mindful that:

> [o]ur standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

- 13 -

> *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005 (internal quotations omitted). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."

*Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (quoting *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa. Super. 2005)).

Wife contends that the trial court failed to follow established precedent when it valued the property as of the parties' divorce date[3] and that its reliance on *Doppler v. Doppler*, 574 A.2d 1101 (Pa. Super. 1990), as opposed to our decision in *Downey v. Downey*, 582 A.2d 674 (Pa. Super. 1980), constitutes reversible error. We disagree on both points.

We have addressed the date of valuation issue on prior occasions. In *Sergi v. Sergi*, 506 A.2d 928, 931–932 (Pa. Super. 1986), we identified various factors to consider in choosing valuation dates. We observed that using date-of-separation valuations could result in a distribution relying upon outdated information or could disregard appreciation or depreciation of assets. However, we also noted that date-of-distribution valuations would fail to account for assets that were consumed during the pendency of the divorce and would allow a party to avoid including a marital asset in distribution. Ultimately, we concluded that "we do not attempt at this time

---

[3] We note that the parties separated in 1988 but were not divorced until 1995. The trial court utilized the date of divorce in its valuation calculation, as opposed to the earlier date of separation.

to establish a valuation to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice." **Id.** at 932.

Since **Sergi**, we have upheld trial court decisions that have used date-of-distribution valuations, as well as those employing date-of-separation valuations; these affirmances relied upon the fact that the trial court provided a sufficient rationale for its decision. **See, e.g., Diamond**, 519 A.2d at 1017 (using date of separation for land that was improved by the husband's post-separation efforts); **Bold v. Bold**, 516 A.2d 741, 745 (Pa. Super. 1986) (using date of distribution when new appraisal was more credible and there was no evidence of waste or dissipation).

The discretion accorded courts in choosing the valuation date was somewhat diminished by the Pennsylvania Supreme Court in **Sutliff v. Sutliff**, 543 A.2d 534 (Pa. 1988), wherein the Court noted a preference for using the date of distribution. **Id.** at 536–537. We have since acknowledged the date-of-distribution preference, but have noted that there remains factual situations, such as when one spouse consumes or dissipates an asset or when one party during separation has control of the fate of an asset, where date of separation values may be more appropriate. **Smith v. Smith**, 653 A.2d 1259, 1270-1271 (Pa. Super. 1995); **see also Nagle v. Nagle**, 799 A.2d 812, 820 (Pa. Super. 2002) (observing that the **Sutliff** Court recognized that the separation valuation date could be appropriate in

situations where one spouse consumes or disposes of a marital asset after separation).

Based upon this case law, we reject Wife's contention that the trial court erred in fixing valuation at the date of the divorce. Here, the trial court aptly recognized that it must determine the date of valuation within the context of the primary goal of working economic justice between the parties. The trial court found that a date-of-distribution value would result in a windfall to Wife and disregard Husband's and Tamara's financial and physical investment in the property. We cannot say that the trial court abused its discretion in doing so.

We also reject Wife's position that *Downey*, and not *Doppler*, controls whether the doctrine of laches applies herein. In *Doppler*, the husband and the wife divorced in 1964. That same year, the husband instituted a partition action to divide the parties' marital property. It was agreed that the wife would receive title to the real estate upon her payment of one-half of the equity value of their former residence to the husband. The wife satisfied her obligation, but the husband failed to appear at the settlement conference and took no action on the partition proceeding for twenty years. Then, in 1984, the husband brought a second partition action concerning the same marital property. *Doppler*, 574 A.2d at 1102–1103.

In reversing the trial court's order fashioning partition, we concluded that the husband was equitably estopped from pursuing the 1984 partition

action because he did not meet the obligations imposed by the 1964 partition agreement and because he permitted the wife to maintain the property as if she were the sole owner. We also determined that the husband "was guilty of extraordinary laches" reasoning that his failure to litigate his original action "lulled Mrs. Doppler into believing he had relinquished any further claims to the property." **Doppler,** 574 A.2d at 1106. Noting that the wife paid the mortgage and taxes and maintained the property without the husband's contribution, we concluded that "it would work to [the wife's] prejudice to allow Mr. Doppler to benefit from the increase in the property's value during his twenty years of inaction." **Id.** Finally, and analogous to the matter herein, we posited that the wife's lack of diligence in pursuing the partition action did not mean that she was "similarly guilty of laches. . . . [I]t was not incumbent upon her, as it was on Mr. Doppler, to prosecute the partition action with diligence." **Id.**

Six months after the **Doppler** decision, we came to an opposite conclusion on a laches issue. In **Downey**, the husband and the wife separated in 1969. After the husband left the marital home, he paid some of the utility bills and taxes on the property, but did not significantly contribute to the maintenance of the marital property. In contrast, the wife continued to reside in the marital home, paid taxes on the property, and maintained the property. The husband eventually filed for divorce in 1982, and equitable distribution proceedings ensued. Discovery on the parties'

economic claims continued for seven years. After hearings, the trial court awarded the marital residence to the wife but directed that she pay the husband sixty percent of the value of the property plus interest. *Downey*, 582 A.2d at 677–678. On appeal to this Court, the wife argued that the doctrine of laches barred the husband from benefitting from the post-1969 increase in value of the property. We rejected this argument because the wife did not sustain "her burden with respect to the element of prejudice in this case" as "she, just as easily as [the husband] could have initiated divorce proceedings in order to secure a division of property and protect her interests." *Id*. at 680 (citation omitted).

The *Downey* Court distinguished *Doppler* as follows:

The case before us presents a different situation than *Doppler.* In *Doppler,* a partition proceeding was filed with the court and the parties had agreed upon a settlement. In this case, however, no proceeding was ever initiated with the court. More importantly, we are unable to discover any authority which requires married parties to file divorce or partition proceedings where they prefer to live separate and apart but continue to hold their property as husband and wife. For these reasons, we believe the doctrine of laches should not be applied so as to preclude appellee from receiving the post-separation share of the marital property.

*Downey*, 582 A.2d at 684 n.7.

We agree with Husband that "the instant matter is much more analogous to *Doppler* than *Downey*." Husband's Brief at 22. As in *Doppler*, a significant time, seventeen years, elapsed between the entry of the divorce decree and Wife's resurrection of her equitable distribution claim. Second, because Wife initiated the equitable distribution claim, it was

- 18 -

incumbent upon her, not Husband, to diligently litigate the claim. For that same reason, Husband, the party against whom the claim was filed, cannot be accused similarly of laches. The resulting prejudice to Husband from Wife's inaction also parallels the prejudice in ***Doppler***. The trial court found that Husband testified credibly that he and Tamara developed the property into a usable farm, made significant improvements to the buildings on the property that required extensive financing, and paid all the taxes and expenses attached to the property. In contrast, the trial court observed that Wife made no contribution to the property and did not express any interest in the property in conversations with Husband through the years. Thus, the trial court did not err in determining that ***Doppler*** was the correct precedent in this matter.[4]

We summarize our conclusions on the laches issue as follows: 1) the legal question of the propriety of application of the laches doctrine in this matter is answered affirmatively—Husband established delay arising from Wife's failure to diligently pursue her claim and prejudice resulting from the delay; 2) the trial court did not abuse its discretion in setting the property valuation date as the date of the divorce; and 3) the trial court did not apply

---

[4] Wife also contends that the trial court erred in relying upon ***Bonds v. Bonds***, 689 A.2d 275 (Pa. Super. 1997), in rendering its decision. This assertion overstates the significance the trial court placed on this case. The trial court opinion cited ***Bonds*** only for the general principle that laches arises when one party's delay in pursuing a claim prejudices the rights of another party. ***Id***. at 728; Trial Court Opinion, 9/21/15, at 4.

J-A16016-16

inapposite decisional law. We further conclude that the trial court's application of the doctrine of laches thoughtfully effectuated "economic justice between the parties and achiev[ed] a just determination of their property rights." **Smith**, 904 A.2d at 18. Accordingly, Wife is not entitled to relief on this claim.

Wife also argues that the trial court erroneously applied the doctrine of laches to credit Husband with alimony *pendent lite* ("APL") payments in the amount of $41,440.00. The trial court offered the following rationale to justify the APL credit to Husband:

> Wife complains that I applied the doctrine of laches to credit Husband for the $41,440.00 he paid to Wife in APL since her remarriage in August of 2001. APL exists to put the parties on equal footing throughout the litigation. APL normally is extinguished at the entry of a divorce decree, at which time it can convert to alimony if appropriate. Alimony customarily ends at remarriage.
>
> Wife did nothing to advance her claims. Instead, she continued to deposit Husband's check every month for fourteen years after remarrying. She testified she used the APL payments to fund her retirement account, and requested reimbursement of the attorney fees she incurred in this litigation.
>
> Husband testified he was told by the court that he had to continue to pay Wife. I found Husband's testimony credible as to his belief that he had no choice. That Husband may have been foolish does not negate the fact that his APL payments to Wife should have ended long before they did. The parties were together for 24 years and Husband paid APL for 20 years. I exercised my equitable powers to effectuate fairness here by providing him a credit for the years he continued to pay APL after Wife had remarried.

Trial Court Opinion, 9/21/15, at 8 (record references omitted).

- 20 -

We review APL awards under an abuse of discretion standard. *Childress v. Bogosian*, 12 A.3d 448, 463 (Pa. Super. 2011) (citing *Haentjens v. Haentjens,* 860 A.2d 1056, 1062 (Pa. Super. 2004)). Moreover, we have described the purpose of an APL award as follows:

> APL is "an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S.A. § 3103. APL "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 389 (1996). Also, and perhaps more importantly, "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *Id.* at 388. APL is thus not dependent on the status of the party as being a spouse or being remarried but is based, rather, on the state of the litigation. *DeMasi v. DeMasi,* 408 Pa.Super. 414, 597 A.2d 101, 104–105 (1991). Alimony, in contrast, is terminated upon remarriage or cohabitation. *Id.* at 104–105; *see also* 23 Pa.C.S.A. § 3706. Since, however, the purpose of APL is to provide the dependent spouse equal standing during the course of the divorce proceeding, it does not come with the "sanction" of Section 3706. *DeMasi,* at 104–105. "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse." *Haentjens,* at 1062; *see also DeMasi,* at 105.

*Schenk v. Schenk,* 880 A.2d 633, 644–45 (Pa. Super. 2005).

Additionally,

> "In ruling on a claim for alimony pendente lite, the court should consider the following factors: the

ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." *Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382, 389 (1996). "An award of alimony pendente lite may be modified or vacated by a change in circumstances.... It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification." *Id.* at 388.

*Busse* [*v. Busse*, 921 A.2d 1248, 1255 (Pa. Super. 2007)].

*Childress*, 12 A.3d at 463 (footnote omitted).

Wife mounts five challenges to the trial court's APL credit to Husband: 1) Wife asserts that her remarriage should not have triggered the termination of APL payments; 2) the trial court erred in applying laches principles in awarding the APL credit; 3) Husband did not meet his burden to demonstrate a change in circumstances justifying modification of APL; 4) by terminating the APL award, the trial court deprived Wife of use of the funds during this litigation; and 5) Wife questions the trial court's language in terminating the APL award "immediately" in its May 12, 2015 equitable distribution order. Order, 5/12/15, at 8. Wife asserts that the "only logical conclusion is that APL terminated on May 12, 2015 with no provision for retroactivity. Yet, the court inexplicably then gave Husband a $41,400.00 credit" without any inquiry or evidence of a change of circumstances justifying modification of APL. Wife's Brief at 35–36. None of Wife's arguments has merit.

First, while our case law informs that APL is not dependent on the status of the party as being a spouse or being remarried, *see DeMasi*, 597 A.2d at 104–105, we do not read the trial court opinion as designating Wife's 2001 remarriage as the sole reason for terminating APL. It appears, instead, that the trial court utilized the remarriage date as a demarcation when laches would operate to diminish Wife's stake in the marital estate. Additionally, the court considered the evidence that Wife was in a better financial position than Husband when constructing its equitable distribution order. Findings of Fact and Order of Court, 5/12/15, at 7.

Next, we have already rejected Wife's argument that the trial court erred in applying the doctrine of laches. The same reasoning undermines Wife's argument that laches could not operate to justify the APL payment credit to Husband.

Regarding Husband's failure to meet his burden to demonstrate a change in circumstances warranting modification of APL, we note that the certified record does not indicate that Husband filed a motion for modification. Accordingly, it was not incumbent upon him to demonstrate changed circumstances. In any event, the evidence produced at the hearing clearly demonstrated that Wife's situation had changed. Not only had she remarried, but her financial position was superior to Husband's. Findings of Fact and Order of Court, 5/12/15, at 7. Additionally, testimony from her current husband, James Huzdovich, revealed that Wife had access to

significant sums deposited in their joint checking account. N.T., 3/18/15, at 273.

Wife also asserts that the trial court's decision to terminate APL deprived her of use of the funds during this litigation. Wife hardly has the clean hands necessary to advocate this position. *See Terraciano v. Com., Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-238 (Pa. 2000) (the party seeking equity "must do so with clean hands") (citation omitted). Wife did not litigate her equitable distribution claim for seventeen years, and she accepted APL payments from Husband for fourteen years after her remarriage. During this period, the stated purpose of APL, to provide the dependent spouse equal standing during the course of the divorce proceedings, was clearly frustrated. Wife cannot come forward now and complain that she is currently deprived of funds to pursue her claims when she accepted funds earmarked for that purpose for the seventeen years that the litigation was idle due to her lack of diligence.

We likewise dismiss Wife's final argument that the terminology employed in the trial court's order terminating APL was inconsistent with its credit award to Husband. The language in the court's order is readily understood as relieving Husband of his APL payment responsibility as of the date of the order. The trial court's decision to credit Husband for the payments made after Wife's remarriage was a separate consideration, reasoned by its obligation to effectuate economic justice between the

parties.  Accordingly, the trial court did not abuse its discretion in awarding Husband credit for APL payments made after Wife's remarriage.

Wife also faults the trial court for not crediting her with the monetary value of items of farm equipment she left on the property in 1991, while at the same time crediting Husband with the costs he incurred in preparing the property for farming when these improvements did not enhance the value of the property.  The trial court resolved this issue as follows:

> Wife asserts I erred by crediting Husband with expenditures made to prepare the real estate for farming operations "that did nothing to enhance the value of the real estate" and "despite the fact that [Husband] admitted that the Farm has never made a profit."
>
> I found Husband's testimony regarding the work and money it took to improve the property into a working farm to be credible.  The profitability of the farming operation or lack thereof does not mean that Husband did not increase the value of the land.  I placed no monetary value on Husband's labor, nor was he given any direct "credit" for the improvements. Instead, I limited the value to which Wife was entitled to the Farm's value at divorce.  Wife agreed she was not entitled to the improvements. (TR. 1/28 p. 14).
>
> Wife also asserts it was error to assign Wife $10,504.50 for the auction of farm equipment as she realized, after cost of sale, only $9,555.05.  Upon review of the record and Wife's exhibits, I find that Wife is correct in this regard and Husband's equalization payment should be increased by $949.45.
>
> Wife also asserts it was error not give her credit for the value of two pieces of farm equipment which she left on the Farm in 1991.  As there was no way to ascertain the condition of the equipment or its value, this was not error.

Trial Court Opinion, 9/21/15, at 8–9.

Wife disagrees with the trial court's statement that the value of the subject farm equipment, a tractor and a brush hog, could not be ascertained, countering that the evidence demonstrated that Husband and Tamara continued to use the equipment until 2008. Husband's and Tamara's use of the equipment, however, is not competent evidence of its value. Thus, there was no abuse of discretion in the trial court's decision to deny Wife a credit in this regard. Further, Wife mischaracterizes the trial court's consideration of Husband's improvements to the property. The trial court did not, as Wife claims, separately credit Husband for enhancements to the value of the property. Rather, it considered the improvements in its laches analysis wherein it concluded that "[t]o allow Wife to assert a claim to the present value [of the property] would work a great prejudice to Husband and Tamara." Trial Court Opinion, 9/21/15, at 7. We have already decided that the trial court properly factored in the doctrine of laches in fashioning its equitable distribution order. Wife cannot demonstrate that the trial court abused its discretion or committed an error of law by valuing the property as of the date of divorce before many of the improvements were made.

Wife's remaining issues concern the trial court's disposition of Wife's assertion of a claim to the oil and gas rights on the Farm. Regarding these mineral rights, the trial court explained:

> I assigned no value to the mineral rights as neither party provided valuations of same. I found it speculative, to assume that there is natural gas to be had or that any future lease would be profitable. I found it would be prejudicial to Husband and

Tamara to force drilling, which is contrary to their expressed wishes, due to Wife's belated assertion of her interest in the Farm.

* * *

On June 10, 2015, Wife filed a Motion for Clarification and Reconsideration. I denied the majority of her requests but expressly granted reconsideration regarding oil and gas rights. My Order on Reconsideration modified the May 12, 2015 Order as follows:

> If and only if and to the extent that [Husband and Tamara] pursue oil and gas rights, [Wife] is hereby granted a 1/3 interest in said profits. [Wife's] interest is extinguished on transfer of the property in an arm's length sale to a bona fide third party purchaser or on her death.

* * *

[T]he doctrine of laches is applicable to Wife's belated assertion of rights in oil and gas rights associated with the real estate. Husband and Tamara credibly testified they have no interest in drilling on their property and that doing so would jeopardize their farming operation. I found it would work a great prejudice to Husband and Tamara to allow Wife to force them to drill on land on which they live and which she has ignored for seventeen years.

My June 10, 2015 Order, provides that, if in fact, Husband and Tamara do permit drilling and any profits are realized, Wife is entitled to one third of those profits. I found Husband and Tamara credible on this issue, however, I do not think they are motivated by money and profits and thus believe them when they say they do not intend to drill. I understand Wife's skepticism regarding this issue, especially since Wife and Husband explored the idea of exploiting mineral rights on the land in the past. This protects Wife should Husband decide to drill.

Trial Court Opinion, 9/21/15, at 3–4, 7–8 (record references omitted).

On appeal, Wife contends there was evidence produced at trial that the trial court should have considered concerning the value of the oil and gas

rights on the property. She also restates her position that laches should not have factored into the trial court's analysis that precluded any benefit inuring to Wife from the mineral rights. Finally, Wife takes issue with the trial court's June 10, 2015 order granting partial reconsideration, arguing that the order did not in fact grant her any additional rights in the oil and gas rights.

Wife's contention that the testimony presented at trial provided the trial court with evidence from which it could value the oil and gas rights is unsupported. First, Richard English, Wife's expert real estate appraiser, noted in his written appraisal that the property "was encumbered by an 'oil and gas lease'" but stated that he "will not provide an opinion on the value of the 'lease' as that is beyond the 'scope of the work'" and his expertise. Wife's Pretrial Statement, 3/9/15, Appraisal Report at 11. When questioned at trial about oil and gas activity in Mercer County, *i.e.*, whether people were buying or taking leases for gas development, Mr. English responded: "No. That's pretty well died off." N.T., 3/19/15, at 56. Thus, the evidence produced by Wife at trial concerning oil and gas value consisted of her expert's admissions that valuation of these rights was beyond his competence and his observation that oil and gas activity in Mercer County was no longer robust. Given the dearth of evidence produced by Wife, the trial court acted well within its discretion when it declined to speculate as to

the value of the oil and gas rights, and in ultimately assigning no value to the mineral rights.

Wife's additional argument that the trial court abused its discretion by precluding her from presenting testimony from Ron Mutha, who researched oil and gas leases on properties adjoining the property, also fails. Husband objected to this witness because he had late notice that Mr. Mutha would testify about leases, and he did not have the opportunity to review the supporting documentary evidence—leases, maps, and drawings—prior to trial. N.T., 3/19/15, at 110. The court sustained the objection after Husband agreed to stipulate that there was oil and gas activity in the area surrounding the property. *Id*. at 113. Wife does not offer any challenge to the trial court's legal rationale for excluding Mr. Mutha's testimony; we, in turn, conclude that the court's ruling in this regard was legally sustainable.

Wife next seeks to revisit her claim that the doctrine of laches should not have affected the trial court's valuation of the marital property, in this instance, the trial court's refusal to consider the value of the oil and gas rights. We continue to reject Wife's attempt to have us conclude that her argument is meritorious and that the trial court erred in applying the doctrine of laches in this matter.

Wife's final argument is that the trial court's June 10, 2015, order granting partial reconsideration "in reality, gives [Wife] no reconsideration." Wife's Brief at 41. A reasonable interpretation of Wife's statement is that

she is requesting review of the trial court's denial of her motion to reconsider, a decision that is not reviewable on appeal. *See Cheathem v. Temple University Hospital*, 743 A.2d 518, 521 (Pa. Super. 1999) ("Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal.") (citation omitted). Furthermore, even interpreting Wife's argument as decrying the nature of the relief provided in the trial court's reconsideration order, we find no merit in this assertion. As noted, upon reconsideration of Wife's contention that the trial court failed to recognize and protect her interest in the Farm's oil and gas rights, the trial court ordered that if Husband and Tamara pursued oil and gas rights, Wife would be entitled to one-third interest in any profits. The order also provided that Wife's "interest is extinguished on transfer of the property in an arm's length sale to a bona fide third party purchaser or on her death." Order, 6/10/15. Wife submits that the order establishes nothing more than illusory rights as to any future oil and gas revenues and suggests it puts her at the mercy of Husband's and Tamara's decision to negotiate oil and gas rights.

We have already discussed Wife's failure to propound any evidence regarding the value of the mineral rights, thus, the blame lies squarely on her for the trial court's alleged creation of illusory rights. Additionally, we credit the trial court for its recognition that Wife is entitled to a share of the profits if there is a later decision to lease the mineral rights, as it reflects the

trial court's thoughtful attempt to "effectuating economic justice between the parties and achieving a just determination of their property rights." **Smith** 904 A.2d at 118.

For the above-stated reasons, we conclude that the trial court correctly applied the doctrine of laches in fashioning its equitable distribution order and that its final order represented a legally sound and well-reasoned assessment of the parties' respective rights to the marital property. Accordingly, the issues raised in Wife's appeal are without merit.

**993 WDA 2015 – Tamara's Appeal**

Tamara has also filed an appeal from the trial court's order, asserting that the trial court erred by failing to apply either principles of equitable estoppel or laches to foreclose Wife from pursuing her equitable distribution claim. The trial court adjudicated Tamara's cross-appeal as follows:

> The doctrine of equitable estoppel arises when a party, "by acts or representations, intentionally or through culpable negligence, induces another to believe that certain facts exist and that party relies and acts on such belief to his or her prejudice if the former is permitted to deny the existence of such facts." _Appeal of McNelly_, _553 A.2d 472, 477 (Pa. Cmmwlth. 1989)_. "Equitable estoppel prevents one from doing an act differently from the manner in which another was induced by word or deed to expect." One who asserts equitable estoppel must prove the elements by clear, precise and unequivocal language. _Bonds, supra_, _at 278_.

> I found equitable estoppel did not apply to completely bar Wife's claims for equitable distribution from being asserted in this case because Husband was aware of the existence of certain facts and could have expected Wife's actions to a limited degree. In this case, not only did Husband list Wife's claims as still pending in 1995, he again acknowledged the claims in 2012 by

submitting a Marital Settlement Agreement to Wife to resolve them. The only thing he could not have expected due to Wife's delay was her assertion of an interest in [the] present value of the Farm or in mineral rights.

Likewise, I did not find that Wife's inaction was enough to completely bar her claims from being asserted based on the doctrine of laches, as set forth above. As described in detail above, the value I placed on the marital property was as I determined it likely would have been had Wife moved her case forward appropriately seventeen years prior.

Because I essentially applied the doctrine of laches to the resolution of the claims, economic justice was effectuated between all the parties. Tamara's cross-appeal should fail.

Trial Court Opinion, 9/21/15, at 9–10.

Tamara asserts appellate review of three issues:

I. Whether the Court erred in continuing proceedings for equitable distribution after 17 years when the doctrine of equitable estoppel should have barred [Wife] from pursuing equitable distribution.

II. Whether the Court erred in not applying the elements of laches to [Wife's] claims for equitable distribution, as there was a substantial delay in [Wife's] bringing of the action, [Wife] was the cause of the delay and [Husband and Tamara] have been prejudiced because of the delay.

III. Whether the Court erred in failing to quantify and protect the equity interests of [Tamara].

Tamara's Brief at 3.

As our Supreme Court has outlined:

The doctrine of equitable estoppel:

> prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or

- 32 -

representations **which leads another to rely justifiably thereon to his own injury or detriment**, may be enforced in equity.

*Shedden v. Anadarko E. & P. Co., L.P.*, 136 A.3d 485, 492 (Pa. 2016) (quoting *Novelty Knitting Mills*, 457 A.2d 502, 503 (Pa. 1983) (emphasis in original)). Whether equitable estoppel exists in a given case is a question of law. *Stonehedge Square Ltd. P'ship v. Movie Merchants, Inc.*, 685 A.2d 1019, 1023–1024 (Pa. Super. 1996) (citing *Nesbitt v. Erie Coach Company*, 204 A.2d 473, 476 (Pa. 1964)). Additionally, the party asserting estoppel must establish by unequivocal evidence:

> (1) that the party against whom the doctrine is sought to be asserted intentionally or negligently misrepresented a material fact, knowing or with reason to know that the other party would justifiably rely on the misrepresentation, (2) that the other party acted to his or her detriment by justifiably relying on the misrepresentation, and (3) that there was no duty of inquiry on the party seeking to assert estoppel.

*Stonehedge*, 685 A.2d at 1023–1024 (Pa. Super. 1996) (quoting *Homart Development Co. v. Sgrenci*, 662 A.2d 1092, 1099–1100 (Pa. Super. 1995) (*en banc*)).

We do not agree with Tamara that equitable estoppel completely barred Wife from pursuing her rights to the marital property. Wife did not voice any misrepresentation concerning her property rights. Additionally, Tamara's assertion that Wife's silence provided grounds for equitable estoppel is not defensible. The two cases that Tamara cites in support, *Chapman v. Chapman*, 59 Pa. 214, 219 (Pa. 1868) and *Liberty Property*

*Trust v. Day-Timers, Inc.*, 815 A.2d 1045 (Pa. Super. 2003), are distinguishable.  In **Chapman**, the Pennsylvania Supreme Court described the type of silence which would justify application of the equitable estoppel doctrine:  "Silence will postpone a title when one should speak out, when, knowing his own right, one suffers his silence to lull to rest, instead of warning of danger; when, to use the language of the books, silence becomes a fraud."  **Chapman**, 59 Pa. at 219.  Clearly, Wife's silence in this matter cannot be considered tantamount to fraud.

In **Liberty Property**, a lessor purchased property from its predecessor-in-interest.  After the sale, lessees, asserting an oral modification to the rent schedule, refused to pay rent in accordance with lease.  Lessor sued for breach of contract and declaratory relief and judgment was entered in favor of the lessees.  We reversed, holding that lessees were equitably estopped from asserting the effect of the oral modification because:  (1) lessor was not on notice of the modification, and (2) by denying oral modifications to the lease, lessees negligently induced lessor into believing that the lease was in effect as written.  *Id*. at 1052.  In reaching this conclusion, we pointed out that it was error for the trial court to consider the lessees' silence about the rent modification because, in fact, the lessees were "not **silent** about the modification.  Rather, [they] **explicitly declared** that no oral modifications existed."  *Id.* (emphasis in

original). Thus, contrary to Tamara's representation, *Liberty Property* did not conclude that silence can reason application of equitable estoppel.

Furthermore, we agree with the trial court that Wife's actions could have been anticipated to some degree. As such, Tamara, who testified that she knew in 1999 that Wife's name remained on a deed for a portion of the real property, *see* N.T., 3/19/15 at 101, cannot meet the *Stonehedge Square* requirement that, as the party seeking estoppel, she has no duty of inquiry. *Stonehedge Square*, 685 A.2d at 1024.

Tamara also contends that the trial court erred in concluding that the doctrine of laches did not bar Wife's equitable distribution claims *in toto*. Tamara's argument is premised on the holding in *Doppler*, and we have previously endorsed the trial court's reliance on this case. However, when we determined that the trial court was correct in utilizing *Doppler* to justify application of the laches doctrine, we did so within the context of the trial court's decision to value the marital property as of the date of divorce as opposed to the date of distribution. We concluded that the trial court's valuation effectuated economic justice between Wife and Husband in that it denied Wife any benefit from improvements that Husband and Tamara made to the property after the divorce decree was entered. To now accept Tamara's position that the equities demand that Wife cannot pursue her equitable distribution claim to any degree would overrule our prior analysis on this matter. This we decline to do.

Finally, Tamara faults the trial court's analysis of her property interests, claiming that the trial court failed to quantify and protect her specific rights. Tamara objects to the fact that the trial court focused its attention on Husband's reaction to Wife's inactivity but did not discuss efforts expended by Tamara regarding improvements to the property or Tamara's reliance on Wife's seventeen-year delay in pursuing this litigation. Tamara fails to cite any legal authority for the proposition that the trial court was required to conduct a completely separate analysis as to her rights, and we discern no error in the trial court's discussion of Tamara's rights. Additionally, Tamara's description of the trial court's opinion is inaccurate. On several occasions, the trial court referenced both Husband's and Tamara's efforts concerning improvements to the property and the financial obligations incurred by both in effectuating these enhancements. Trial Court Opinion, 9/21/15, at 5–7. Accordingly, we conclude that the trial court adequately discussed and correctly decided the extent of Tamara's property rights. For these reasons, Tamara's cross-appeal has not raised any meritorious claims.

Order affirmed.

Judge Olson joins the Memorandum.

Judge Strassburger files a Concurring & Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2016